**UNITED STATES of America,**

v.

**Charles M. HERNANDEZ, Appellant.**

**No. 99–5577.**

United States Court of Appeals, Third Circuit.

Argued: May 23, 2000.

Filed: June 29, 2000.

Andrew E. Anselmi (Argued), McCusker, Anselmi, Rosen, Carvelli & Walsh, Chatham, NJ, Counsel for Appellant.

Robert J. Cleary, United States Attorney, George S. Leone Chief, Appeals Division, Elizabeth Scott Ferguson (Argued), Assistant United States Attorney, Newark, NJ, Counsel for Appellee.

Before BECKER, Chief Judge, ROTH and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal primarily raises a troublesome question arising out of the Government's efforts to curb criminal recidivism. The defendant, Charles M. Hernandez, pleaded guilty to a one-count indictment charging him and others with conspiracy to distribute more than 500 grams of cocaine. Thereafter, the Government sought to enhance his sentence pursuant to U.S.S.G. § 4B1.1, the career offender provision of the United States Sentencing Guidelines. To do so, the Government offered two Certificates of Disposition of the county clerk of a state court certifying that the defendant had two prior convictions for possession of a narcotic with intent to sell.

The defendant challenged the accuracy of these certificates, contending that the convictions at issue were for possession only, a crime which could not be the predicate for enhancement under the Guidelines. To support his claim, the defendant sought to introduce the transcript of his plea colloquy in the state court for the offenses in question. The United States District Court for the District of New Jersey accepted the Certificates of Disposition into evidence, but refused to consider the transcript of the plea colloquy proffered by the defendant. Thus, relying solely on the Certificates of Disposition, the District Court classified the defendant as a career offender. As a result of the career offender classification, the defendant's term of imprisonment nearly doubled. The court sentenced him to 220 months of confinement.

On appeal, the defendant claims that the District Court erred in refusing to consider the transcript of his plea colloquy. He also contends that the District Court erred in declining to grant him an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b) (acceptance of responsibility) as well as in failing to make sufficient findings to support its refusal to depart under U.S.S.G. § 5H1.4 (extraordinary physical impairment). We agree with the defendant that the District Court erred in refusing to consider the transcript of his plea colloquy, but affirm on the downward adjustment and departure rulings. Accordingly, we will vacate the defendant's sentence and remand for resentencing solely on the career offender issue.

### I.

#### A.

On November, 17, 1998, a federal grand jury sitting in the District of New Jersey

returned a one-count indictment charging the defendant and his son with conspiring with each other and with others to distribute more than 500 grams of cocaine. The indictment was based on the defendant's dealings with a confidential informant who was working with the United States Drug Enforcement Agency.

On November 30, 1998, the Government sent the defendant a written plea agreement. Under the agreement, which the defendant had until December 11, 1998 to accept, the defendant was required to name his son as a coconspirator during his allocution. On December 11, 1998, counsel for the defendant informed the United States Attorney that the defendant was willing to plead guilty to the indictment, but that he would not name his son as part of the allocution. On December 16, 1998, counsel for the defendant also wrote a letter to the District Court to inform it of defendant's interest in pleading guilty. In the letter, counsel explained that the defendant was not willing to name his son during the allocution, but that the defendant would name other individuals with whom he had conspired. Counsel also requested the District Court to advise the parties of a date upon which the matter could be heard. The District Court never responded to the letter.

The Government then sent a letter to the District Court on December 31, 1998. In the letter, the Government acknowledged that it understood the defendant wished to plead guilty to the indictment. The Government also explained that it had "reason to believe that the defendant may seek to limit his factual allocution to having conspired 'with others,' but not explicitly state that he did so with his son and codefendant 'Charlie Hernandez.'" Appellant's Appendix at 4–7. The Government submitted that "[i]f the defendant does not identify his son as th[e] other individual, but does acknowledge that he agreed with some culpable individual, then the Court in its discretion may find a basis in fact for the plea." *Id.*

On January 4, 1999, the defendant appeared before the District Court. When the Court asked the parties if they were before it for a plea, counsel for the defendant explained that his client possessed some reservations about entering a plea. The Court replied by directing the parties immediately to go to trial but took a brief recess. When the parties returned, they informed the Court that the defendant would plead guilty to the indictment and that no plea agreement existed. The defendant then pleaded guilty without naming his son as a co-conspirator during the allocution.

### B.

After entry of the defendant's guilty plea, the probation office prepared a Presentence Investigation Report ("PSI"). The PSI calculated the defendant's base offense level at 26, as the offense of conviction involved between 500 grams and 2 kilograms of cocaine. *See* U.S.S.G. § 2D1.1(c)(7). The PSI also assigned the defendant a criminal history category of V, based on the defendant's twelve criminal history points. *See* U.S.S.G. Ch. 5, Part A.

In addition, The PSI recommended that the defendant's base offense level and criminal history category be enhanced under the career offender provision of the United States Sentencing Guidelines. *See* U.S.S.G. § 4B1.1. The PSI recommended the career offender enhancement on the basis of information supplied by the Government that indicated the defendant had three prior drug convictions in the state of New York. With the enhancement, the defendant's base offense level was 34 and his criminal history category was VI. *See* U.S.S.G. § 4B1.1(B). The PSI then decreased the defendant's offense level of 34 by two levels to reflect the defendant's acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a).

At the sentencing hearing, the defendant raised two objections to the PSI. First, he objected to his classification as a career

offender, contending that he had an insufficient number of predicate offenses to qualify as a career offender. Second, he argued that he was entitled to an additional one-level downward adjustment for acceptance of responsibility because he timely notified authorities of his intention to plead guilty. The District Court rejected both of these claims. The defendant then requested the District Court to depart downward under U.S.S.G. § 5H1.4 (extraordinary physical impairment). The defendant asserted that a departure was warranted under this provision because he suffered from Acquired Immune Deficiency Syndrome ("AIDS"). The Court, however, disagreed and declined to depart. The defendant challenges each of these rulings in this appeal, and we address them in turn.

## II.

### A.

■ As noted, the PSI classified the defendant as a career offender on the basis of information supplied by the Government that the defendant had three prior drug convictions in New York state. At sentencing, the defendant asserted that only one of these convictions involved distribution of a controlled substance and that the other two convictions were for offenses of possession only. He then correctly argued that, under U.S.S.G. § 4B1.2, a controlled substance offense involving mere possession cannot serve as a predicate offense to establish a defendant's career offender status. *See United States v. Williams*, 176 F.3d 714, 717 n. 3 (3d Cir.1999).

To support his contention that only one of the New York drug convictions involved more than mere possession, the defendant sought to offer the transcript of the plea colloquy during which he pleaded guilty to the indictments underlying the New York convictions. The transcript reveals that on July 18, 1989 the defendant pleaded guilty to three offenses bearing the Indictment Numbers 5579–82, 3356–83, and 7203–89. The defendant concedes that the offense of conviction underlying Indictment Number 5579–82 involved distribution of a controlled substance. He vigorously contests, however, that the offenses of conviction underlying Indictment Numbers 3356–83 and 7203–89 involved anything more than possession.[1]

The transcript of the plea colloquy reveals the following:

THE COURT: 7203, what is he pleading to?

[DEFENSE COUNSEL]: Criminal *possession* in the third degree, your Honor.

THE COURT: *Possession*?

[DEFENSE COUNSEL]: Yes, your Honor.

THE COURT: And on 3356?

[DEFENSE COUNSEL]: Of '83, criminal *possession* in the third degree. District Attorney wants him to plead guilty to criminal possession of a weapon in the third degree; is that right?

[DISTRICT ATTORNEY]: That's correct.

\*　　\*　　\*　　\*　　\*　　\*

THE CLERK: Mr. Charles Hernandez, do you now withdraw your plea of not guilty entered to indictment Number 3356 of '83 and do you now plead guilty to the crime of criminal possession of a controlled substance in the third degree and criminal possession of a weapon in the third degree to cover the indictment?

THE DEFENDANT: Yes, sir.

THE CLERK: Mr. Charles Hernandez, do you now withdraw your plea of

---

1. Indictment Number 3356–83 also involved criminal possession of a weapon. But, this aspect of the charge and resulting conviction is irrelevant to this appeal because it has no effect on defendant's status as a career offender.

not guilty to Indictment Number 5579 of '82 and do you now plead guilty to the crime of criminal sale of a controlled substance in the third degree to cover the indictment?

THE DEFENDANT: I plead guilty.

THE CLERK: Mr. Charles Hernandez, do you now withdraw your plea of not guilty to Indictment Number 7203 of '89 and do you now plead guilty to the crime of criminal possession of a controlled substance in the third degree to cover the indictment?

THE DEFENDANT: I plead guilty.

\*   \*   \*   \*   \*   \*

[DISTRICT ATTORNEY]: Mr. Hernandez, on May 25, 1983, in the County of Kings, In Brookly, on 40th Street and Fifth Avenue, did you sell a quantity of drug to another person?

[Discussion held between DISTRICT ATTORNEY and DEFENSE COUNSEL, off the record]

[DISTRICT ATTORNEY]: I'm sorry. Did you possess a quantity of drug at that location while acting with another person?

THE DEFENDANT: Yes, I did . . .

Appellant's Appendix at 61–66 (emphasis added).

The Government responded to the defendant's proffer of the plea colloquy transcript in two ways. First, to demonstrate that the defendant's prior drug convictions

for Indictment Numbers 3356–83 and 7203–89 did, in fact, involve more than mere possession, the Government produced the Certificates of Disposition for those convictions. The Certificates of Disposition, which were prepared by the Kings County Clerk on December 30, 1998, certified that by pleading guilty to Indictment Numbers 3356–83 and 7203–89, the defendant admitted guilt to New York Penal Law § 220.16(1), which proscribes possession of a narcotic with intent to distribute.[2] *See* Appellant's Appendix at 51–52. Second, the Government argued that under various decisions of this Court as well the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the District Court could not consider the transcript of the defendant's plea colloquy in determining whether the offenses in question constituted controlled substance offenses.

The District Court sided with the Government. The Court explained: "It seems to me that the law is clear on this. I look at the certificate of disposition, [it] discloses prior conviction, those convictions are for possession with intent to sell." Appellant's Brief Appendix at 12. The Court then responded to the defendant's argument that the Certificates of Disposition were unreliable because they were inconsistent with the original Sentences and Orders of Commitment[3] for the offenses by stating: "That's your argument, but you have nothing to support that and I'm not going to go back and retry the case." *Id.* Thus, relying solely on the Certificates of Disposition, the Court found that the

---

**2.** New York Penal Law § 220.16 is entitled Criminal Possession of a Controlled substance in the Third Degree. The statute proscribes both possession with intent to distribute and mere possession where the quantity of drug meets or exceeds a specified weight. The full text of the statute is attached to this opinion as an appendix.

**3.** The original Sentences and Orders of Commitment for the offenses were prepared on August 7, 1989. These documents specify

only that the defendant was convicted of "CPCS3," which we assume is shorthand for the title of New York Penal Law § 220.16. The documents do not, however, indicate the particular subsection of the statute under which the defendant was convicted. That is, they do not indicate whether the defendant was convicted of a subsection proscribing mere possession or possession with intent to sell.

defendant had been convicted of three prior controlled substance offenses and therefore was properly categorized by the PSI as a career offender under U.S.S.G. § 4B1.1.

### B.

The District Court ruled that, as a matter of law, it could not consider anything but the Certificates of Disposition in determining whether the defendant's prior offenses constituted controlled substance offenses. Accordingly, our review is plenary. *See Williams*, 176 F.3d at 715.

Under the United States Sentencing Guidelines, a defendant is a career offender subject to a sentencing enhancement if: (1) the defendant was at least eighteen years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a felony that is a controlled substance offense; and (3) the defendant has at least two prior felony convictions of a controlled substance offense. *See* U.S.S.G. § 4B1.1. The Government bears the burden of proving each element of § 4B1.1 by a preponderance of the evidence. *See United States v. Miele*, 989 F.2d 659, 663 (3d Cir.1993); *see also United States v. Washington*, 115 F.3d 1008, 1010 (D.C.Cir.1997) ("The burden is on the government to prove facts in support of a sentence enhancement by a preponderance of the evidence.").

A controlled substance offense means "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2. Simple possession is not a controlled substance offense under the Sentencing Guidelines. *See Williams*, 176 F.3d at 717 n. 3.

In the case at bar, the defendant does not dispute that he satisfies the first two elements of U.S.S.G. § 4B1.1. Nor does he dispute that his prior conviction for Indictment Number 5579–82 qualifies as a controlled substance offense. Instead, he disputes that the convictions underlying Indictment Numbers 3356–83 and 7203–89 qualify as a controlled substance offenses under § 4B1.2 because these convictions were for simple possession only. Although the defendant concedes that the Certificates of Disposition produced by the Government indicate that these convictions were for possession with intent to sell, he contends that these certificates are erroneous records of his actual convictions. To support his claim, the defendant sought to introduce the transcript of the plea colloquy during which he pleaded guilty to these offenses.

The Government maintains that the defendant may not do so. Essentially, the Government argues, and the District Court agreed, that the Certificates of Disposition conclusively establish that the offenses in question were for violations of New York Penal Law § 220.16(1), which proscribes possession with intent to sell. The Government then asserts that because the statute of conviction for the offenses in question is clear, only the statutory definition of those offenses may be consulted to determine whether they are controlled substance offenses.

We agree with the Government that where the statute of conviction is clear, a sentencing court must generally look only to the statutory definition of the offense to determine whether it constitutes a controlled substance offense. *See Taylor*, 495 U.S. at 602, 110 S.Ct. 2143. We cannot agree, however, that the Certificates of Disposition conclusively establish the statute of conviction in this case. Contrary to the Government's repeated assertions, the Certificates of Disposition are not the judgments of conviction for the offenses in question. Nor are they copies of the judgments of conviction. Rather, they are handwritten documents prepared by the Kings County Clerk more than nine

years after the defendant's convictions. Although the Certificates of Disposition state that the "records on file indicate" that the defendant's convictions were for criminal possession of a controlled substance with intent to sell, it is not entirely clear what records the clerk relied on in reaching this conclusion, or even whether he read them correctly.

Prior to sentencing the Government subpoenaed any and all judgments of conviction and presentence reports relating to the defendant from the Kings County Clerk. In response, the Government received the Certificates of Disposition for the two offenses as well as the indictments for the offenses, the Sentences and Orders of Commitment for the offenses, and the transcript of the defendant's plea colloquy. If, in preparing the Certificates of Disposition, the clerk relied only on these latter documents, we do not believe that he could have reasonably concluded that the offenses in question involved anything more than mere possession.

Although the indictments do charge the defendant with possession with intent to sell, it is not clear that this is the statutory offense to which the defendant pleaded guilty. *See United States v. Spell*, 44 F.3d 936, 940 (11th Cir.1995) (holding that sentencing Court erred in relying on charging to document to ascertain defendant's prior offense of conviction, where Court failed to ensure that the defendant had pleaded guilty to the crime charged). During the entire plea colloquy, neither the Court, the defendant, the defendant's attorney, or the prosecutor make any statement evidencing that the offenses of conviction at issue involved an intent to sell element. Moreover, although the Sentences and Orders of Commitment demonstrate that the defendant was convicted of "CPCS3," which appears to be a short form for New York Penal Law § 220.16., those documents ·do not specify whether the defendant was convicted under a subsection of that statute which requires an intent to sell.

■ Under these circumstances, we hold that the Certificates of Disposition are not conclusive proof of the statute of conviction. In the absence of conclusive proof, we think the defendant is entitled to rely on certain easily produced court documents, such as a plea colloquy, in order to establish that he was not convicted of a statute qualifying as a predicate offense under U.S.S.G. § 4B1.2. *See Spell*, 44 F.3d at 940 (requiring sentencing Court to review defendant's plea colloquy to ensure that he pleaded guilty to an offense qualifying as predicate offense); *United States v. Hill*, 131 F.3d 1056, 1064 (D.C.Cir.1997) (holding that sentencing Court must consult other available indices to verify that the defendant was convicted of crime of violence, including plea agreement). Accordingly, we hold that when deciding whether a prior conviction based on a guilty plea in the state court qualifies as a predicate offense for a sentence enhancement under the federal sentencing guidelines, and the accuracy of a Certificate of Disposition for that conviction is seriously called into question, the federal sentencing judge may, and under the circumstances here must, look to the plea colloquy in the state court to resolve the accuracy of the Certificate of Disposition.

Accordingly, we will vacate the defendant's sentence and remand this case for a redetermination of whether the defendant is a career offender under U.S.S.G. § 4B1.1. On remand, the Government will have the opportunity to obtain the judgments of conviction, or certified copies thereof, for the offenses in question. If the judgments show that the· defendant was convicted of section 220.16(1), then the defendant may be sentenced as a career offender. If not, the career offender sentencing enhancement cannot apply.

### III.

■ We next turn to the defendant's claim that the District Court erred in refusing to grant him an additional one-level downward adjustment for acceptance of

responsibility. The PSI awarded the defendant a two-level downward adjustment under U.S.S.G. § 3E1.1(a). It did not award him, however, the additional one-level downward adjustment under U.S.S.G. § 3E1.1(b) because the "government indicated that the defendant is not entitled to an additional one-point reduction for acceptance of responsibility." PSI at ¶ 25. At sentencing, the defendant claimed that he was entitled to the adjustment under U.S.S.G. § 3E1.1(b)(2) because he timely notified the Government of his intention to plead guilty on December 11, 1998, less than one month after the indictment was returned.

The District Court disagreed. The Court found that the defendant's actions with respect to pleading guilty were both equivocal and tactical. The Court believed that the defendant was maneuvering in effort to obtain the benefit of plea agreement without having to implicate his son during the allocution. The Court also noted that the equivocal nature of the defendant's offer to plead guilty required the Government to continue preparing its case for trial and forced the Court to reserve a portion of its calendar for trial.

On appeal, the defendant contends that the District Court committed clear error in finding that he did not timely notify authorities of his intention to plead guilty. He also argues that the District Court committed legal error in failing to consider, *sua sponte*, whether he was entitled to the additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)(1) for having provided the Government with complete information regarding his involvement in the offense. We see no merit in either of these claims.

Although the defendant did send a letter to the District Court on December 16, 1998, informing the Court of his willingness to plead guilty, the defendant made no timely effort to do so. In addition, after sending the December 16, 1998 letter to the Court, the defendant continued to send signals suggesting that he intended

to put the Government to its burden of proof. For example, on December 29, 1998, the defendant served a four-page omnibus discovery demand on the Government. He also forwarded to the District Court objections to the Government's proposed jury charge and included a jury charge of his own. Finally, even on January 4, 1999, the day before trial, the defendant wavered before pleading guilty. For these reasons, we perceive no clear error in the District Court's finding that the defendant failed to timely notify authorities of his intention to plead guilty.

■ Turning to the defendant's claim that the District Court committed legal error in failing to consider, *sua sponte*, whether he was entitled to a one-level downward adjustment under U.S.S.G. § 3E1.1(b)(1). We see no reason to remand on this issue. There is little, if any, evidence to suggest that the defendant timely provided complete information to the Government concerning his role in the offense. The defendant merely allocuted to the elements of the offense with which he was charged on the day before trial. Although the defendant argues that he was willing to provide this information as of December 11, 1998, he did not do so. Accordingly, we will affirm the District Court's refusal to grant the defendant an additional one level downward adjustment for acceptance of responsibility.

### IV.

■ The defendant's final claim is that the District Court failed to make sufficient findings to substantiate its refusal to depart under U.S.S.G. § 5H1.4. In relevant part, section 5H1.4 provides: "[A]n extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

The defendant was diagnosed with AIDS in July of 1998. At the sentencing hear-

ing, he contended that this condition was an extraordinary physical impairment warranting a departure in the form of a shorter sentence or an alternative to confinement. The Government conceded that the Court had discretion to depart on the basis of the defendant's condition. The Government requested, however, that the Court not exercise its discretion because the defendant committed the instant offense of conviction after being diagnosed with AIDS and because the defendant could obtain adequate medical care while incarcerated.

After consideration of the parties' arguments, the Court declined to grant the departure. It stated:

Although his condition may warrant sympathy, it does not warrant a departure.

As pointed out, this crime was committed after he was diagnosed. That's consistent with my point earlier that I believe that given the chance, he would commit another crime. I believe that approaches certitude, but nevertheless, with regard to this departure, there's been nothing to demonstrate, much less suggest, the Bureau of Prisons is incapable of furnishing him with appropriate medical care. In point of fact, he will probably get much better and more consistent medical care than he would have on his own.

There is simply no basis to suggest that a terminally ill individual who commits a crime should be able to use that terminal illness to escape prison. . . .

I recognize I have the right to downward depart, but I decline to exercise that discretion. I will not downward depart.

Appellant's Brief Appendix at 23.

On appeal, the defendant acknowledges that a District Court's discretionary refusal to depart is not reviewable by this Court. *See United States v. Denardi*, 892 F.2d 269, 279 (3d Cir.1989). He argues, however, that in the instant case the Court's refusal to depart was not an exercise of discretion because the Court did not correctly understand its authority to depart. In support of his position the defendant points to the District Court's statement that "[t]here is simply no basis to suggest that a terminally ill individual who commits a crime would be able to use that terminal illness to escape prison." To ensure proper consideration of his departure request, the defendant requests this Court to remand to the District Court for: (1) a determination whether the defendant's physical and mental disabilities constitute an "extraordinary physical impairment" and (2) if so, whether that impairment warrants a shorter term of imprisonment or an alternative to confinement.

Although the defendant's argument is not entirely without merit, our review of the sentencing transcript persuades us that the District Court understood its authority to depart in this case. The transcript reveals that the Court declined to depart in this case because the defendant had committed the instant crime subsequent to his diagnosis with AIDS, and because the defendant could obtain adequate medical care while incarcerated. Admittedly, the statement of the District Court pointed to by defendant suggests that the District Court incorrectly believed that a terminal illness could never serve as a basis for departure. However, when viewed in the entire context of the sentencing hearing, we do not believe this statement reflects the District Court's rationale for not departing. Accordingly, we see no reason to remand for further findings.

V.

For the reasons set forth above, the defendant's sentence will be vacated and the case remanded for reconsideration and resentencing solely on the career offender issue. In all other respects, the judgment of the District Court is affirmed.

*APPENDIX*

A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly possesses:

1. *a narcotic drug with intent to sell it; or*

2. a stimulant, hallucinogen, hallucinogenic substance, or lysergic acid diethylamide, with intent to sell it and has previously been convicted of an offense defined in article two hundred twenty or the attempt or conspiracy to commit any such offense; or

3. a stimulant with intent to sell it and said stimulant weighs one gram or more; or

4. lysergic acid diethylamide with intent to sell it and said lysergic acid diethylamide weighs one milligram or more; or

5. a hallucinogen with intent to sell it and said hallucinogen weighs twenty-five milligrams or more; or

6. a hallucinogenic substance with intent to sell it and said hallucinogenic substance weighs one gram or more; or

7. one or more preparations, compounds, mixtures o r substances containing methamphetamine, its salts, isomers or salts of isomers with intent to sell it and said preparation, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more; or

8. a stimulant and said stimulant weighs five grams or more; or

9. lysergic acid diethylamide and said lysergic acid diethylamide weighs five milligrams or more; or

10. a hallucinogen and said hallucinogen weighs on e hundred twenty-five milligrams or more; or

11. a hallucinogenic substance and said hallucinogenic substance weighs five grams or more; or

12. *one or more preparations, compounds, mixtures or substance containing a narcotic drug and said preparations, compounds, mixtures or*

*substances are of an aggregate weight of one-half ounce or more; or*

13. phencyclidine and phencyclidine weighs one thousand two hundred fifty milligrams or more.

Criminal possession of a controlled substance in the third degree is a class B felony.

New York Penal Law § 220.16 (McKinney 1999) (emphasis added).