**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1142
_____

UNITED STATES OF AMERICA

v.

CARLOS WILTSHIRE
a/k/a Shawn Carter
a/k/a Shake,

Carlos Wiltshire,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 5-11-cr-00310-001)
District Judge:  Hon. Gene E. K. Pratter

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 13, 2014

Before:  CHAGARES, SHWARTZ, and GARTH, Circuit Judges.

(Filed: June 3, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

     A jury found Carlos Wiltshire guilty of possession with intent to distribute cocaine

base in violation of 21 U.S.C. § 841(a)(1), possession of a firearm by a convicted felon in

violation of 18 U.S.C. § 922(g)(1), and possession of body armor by a convicted felon in violation of 18 U.S.C. § 931(a)(1). On December 19, 2012 and January 10, 2013, the District Court held a two-session sentencing hearing at which it determined Wiltshire to be subject to a sentence enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "ACCA"), and sentenced him to an aggregate 276 months of imprisonment and six years of supervised release.

Wiltshire challenges both his convictions and his sentence, arguing that: (1) the District Court erred in refusing to instruct the jury that mere knowledge of an item's presence does not constitute possession; (2) the District Court erred in relying on New York "certifications of disposition" in finding that Wiltshire qualified for a sentencing enhancement under the ACCA; (3) 18 U.S.C. §§ 922(g) and 931(a) are unconstitutional because they are not a valid exercise of Congress's authority under the Commerce Clause; and (4) Wiltshire's Fifth and Sixth Amendment rights were violated when his sentence increased based on prior convictions that were not charged in the indictment nor admitted or proved to a jury beyond a reasonable doubt. For the reasons that follow, we will affirm the District Court's judgment of conviction and sentence.

## I.

We write solely for the parties and therefore recite only the facts that are necessary to our disposition.

On December 29, 2010, police executed search warrants on Wiltshire and on a house at 663 Gordon Street in Reading, Pennsylvania. Wiltshire was stopped in his car and searched, and police found twenty packets of cocaine base, $529 in cash, a house key

for the house at 663 Gordon Street, and a cell phone on his person.  Police subsequently

searched the house and found a gun, more drugs, and a bullet-proof vest.  Wiltshire told

the police that there were drugs in his bedroom, and the parties dispute whether Wiltshire

also told the police of the existence of the gun.

Wiltshire was charged with possession with intent to distribute, possession of a

firearm in furtherance of drug trafficking, and felon in possession of a firearm and body

armor.  After a bifurcated trial, a jury acquitted Wiltshire of possession of a firearm in

furtherance of drug trafficking, but convicted on the remaining counts.

During the second phase of the trial, concerning the felon-in-possession counts,

the District Court instructed the jury as to the definition of "possession" as follows, in

conformity with the Third Circuit model instruction:

> To establish the second element of this offense, the government must prove
> that Mr. Wiltshire possessed the firearm in question.  To possess means to
> have something within a person's control.  The government does not have
> to prove that Mr. Wiltshire physically held the firearm, that is that he had
> actual possession of it.  As long as the firearm was within his control, he
> possessed it.
>
> If you find that Mr. Wiltshire either had actual possession of the firearm or
> had the power and intention to exercise control over it, even though it was
> not in his actual, physical possession, that he had the ability to take actual
> possession of the firearm when he wanted to do so, you may find that the
> government has proved possession.  Possession may be momentary or
> fleeting.
>
> The law also recognizes that possession may be sole or joint.  If one person
> alone possesses a firearm, that's sole possession.  However, more than one
> person may have the power and intention to exercise control over a firearm.
> This is called joint possession.  If you find that Mr. Wiltshire had such
> power and intention, then he possessed the firearm even if he possessed it
> jointly with another.

Mere proximity to the firearm or the mere presence on the property where it is located, or the mere association with a person who does control a firearm or the property is not sufficient to support a finding of possession.

Proof of ownership of a firearm is not required. The government must prove beyond a reasonable doubt that Mr. Wiltshire knowingly possessed the firearm described in the indictment. This means that he possessed the firearm purposely and voluntarily and not by accident or mistake. It also means that he knew that it was a firearm.

During the conference preceding the jury charge, Wiltshire objected and requested that the instructions be modified by adding the following words to the beginning of the second paragraph: "If you find that Mr. Wiltshire either had actual possession of the firearm or knew of its existence and had the power and intention to exercise control over it . . . ." Appendix ("App.") 322. The District Court declined to modify the instruction, stating that knowledge of the firearm's existence is implicit in the notion of intent to control and in the requirement of knowing possession, both of which were covered in the instruction as written. See id. at 323-25.

Wiltshire also requested that the District Court add the following words to the beginning of the fourth paragraph: "Mere proximity to the firearm or the mere presence on the property where it is located or mere knowledge of the firearm's existence [], if you did find that he knew that the firearm was there, you still have to find that he intended to control it. So mere knowledge of the firearm's existence or mere association . . . ." Id. at 325. The District Court was initially inclined to adopt the modification, but ultimately declined to do so, noting that the insufficiency of mere knowledge to prove constructive possession was implicit in the model instruction as written. See id. at 330.

4

After beginning deliberations, the jury submitted a question to the judge, asking, "Can you please reiterate the exact definition of possession? Specifically, does the knowledge of an item's presence near you constitute possession?" Id. at 546. Wiltshire requested that the District Court respond by re-reading the possession instruction and giving a supplemental instruction that mere knowledge of an item's presence near oneself does not constitute possession. The judge declined to give a supplemental instruction, instead re-reading the possession instruction from the initial charge. Id. at 546-49. The jury returned guilty verdicts five minutes later.

Subsequently, at sentencing, the Government relied upon three prior convictions purportedly sustained by Wiltshire to seek a sentence enhancement under the ACCA: a 1989 New York conviction for attempted second-degree robbery, a 1989 New York conviction for second-degree robbery, and a 2002 Pennsylvania drug-trafficking conviction. To prove the New York convictions, the Government relied in part on Certificates of Disposition ("CODs"), which are documents stating that "it appears from an examination of the records on file" that a person was convicted of a particular offense. The Government also proffered the fingerprint records from the New York cases and evidence that those fingerprints match those taken from Wiltshire in the instant case. The Government also relied upon transcripts of recorded telephone calls Wiltshire made while in pretrial detention, in which he discussed the Government's need to prove prior convictions for any ACCA sentence enhancement.

Wiltshire disputed this evidence, specifically arguing that the CODs are not the type of conclusive evidence of a prior conviction that is required by law. Wiltshire

5

pointed out that the New York fingerprint card for a May 12, 1989 arrest references a different statute that the statute that was indicated on the COD for that offense. Wiltshire disputed the existence of any robbery conviction at all, and argued that the Government was required to produce an actual judgment of conviction or similarly conclusive record to meet its burden of proof.

Despite these arguments, the District Court found that the Government's evidence was sufficient and applied a sentence enhancement under the ACCA. The enhancement had the effect of raising Wiltshire's statutory maximum from 10 years to life, mandating a 15-year mandatory minimum sentence, and raising his advisory sentencing Guideline range from 92-115 months to 262-327 months. The District Court sentenced Wiltshire to 276 months of imprisonment. Wiltshire timely appealed.

## II.[1]

"We exercise plenary review in determining whether the jury instructions stated the proper legal standard. We review the refusal to give a particular instruction or the wording of instructions for abuse of discretion." United States v. Leahy, 445 F.3d 634, 642 (3d Cir. 2006) (quotation marks omitted).

With regard to the ACCA, we review legal challenges to its interpretation de novo, United States v. Gibbs, 656 F.3d 180, 184 (3d Cir. 2011), and review factual decisions regarding criminal history calculations for clear error, United States v. Audinot, 901 F.2d 1201, 1202 (3d Cir. 1990).

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Review of constitutional claims is plenary.  See United States v. Singletary, 268

F.3d 196, 198-99 (3d Cir. 2001).

III.

A.

Wiltshire first argues that the District Court erred in rejecting his proposed

modifications to the jury instructions on constructive possession, both initially and in

response to the jury's question.  He asserts that, based on the District Court's instructions,

a jury could find a defendant guilty based on mere knowledge of an item's presence,

without proof of the other required element of constructive possession:  dominion and

control.  See United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992) ("Constructive

possession necessarily requires both 'dominion and control' over an object and

knowledge of that object's existence.").

Because Wiltshire does not argue that the District Court stated an incorrect legal

standard, but rather takes issue with the allegedly confusing and misleading wording of

the District Court's instructions on possession, we review the instructions for abuse of

discretion. [2]  See Leahy, 445 F.3d at 642.  In doing so, we "consider whether, viewed in

---

[2] Wiltshire also argues, relying upon United States v. Sussman, that we should review the District Court's failure to issue the requested instructions de novo because a court's "refusal to give a jury instruction with respect to the defendant's theory of the case, when preserved, is reviewed de novo."  Wiltshire Br. 22 (citing Sussman, 709 F.3d 155, 175 (3d Cir. 2013)).  Wiltshire argues that this is appropriate because "[a] theory of the defense was that, even if Mr. Wiltshire knew of the gun and bullet-proof vest, he did not possess them."  Id. at 20.  However, Sussman is materially distinct from the instant case.  In Sussman, the defendant proposed a separate jury instruction summarizing his theory of the defense, and the District Court declined to offer that instruction, instead charging the jury with a modified, shortened instruction summarizing the theory of the defense that

7

light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." United States v. Urban, 404 F.3d 754, 779 (3d Cir. 2005) (quotations omitted). In conducting our review, we consider "the totality of the instructions and not a particular sentence or paragraph in isolation." United States v. Jimenez, 513 F.3d 62, 74-75 (3d Cir. 2008) (quotation marks omitted). "Refusal to give a proposed instruction is reversible error only if the omitted instruction is correct, is not substantially covered by other instructions, and is so important that its omission prejudiced the defendant." Urban, 404 F.3d at 779 (quotation marks omitted). "No litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference." Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995). In fact, "'[i]t is well settled that there is no error to refuse to instruct as counsel wishes if the charge to the jury is correct.'" United States v. Sussman, 709 F.3d 155, 178 (3d Cir. 2013) (quoting United States v. Blair, 456 F.2d 514, 520 (3d Cir. 1972)).

In the instant case, the District Court initially read the jury the Third Circuit Model Criminal Jury Instruction on "possession." See App. 537-38; Third Circuit Model Criminal Jury Instruction 6.18.922G-4. In general, use of this Court's model jury instructions is favored. See United States v. Petersen, 622 F.3d 196, 208 (3d Cir. 2010).

Sussman essentially alleged did not reflect the "substance" of his proposed jury instruction and was prejudicial. See id. at 178-79. Here, by contrast, Wiltshire did not proffer a separate "theory of the defense" instruction that was then rejected and replaced by the District Court; rather, Wiltshire proposed specific language modifying the wording of the District Court's instruction on possession, one of the elements of the charged offenses. Notably, even when applying the de novo standard in Sussman, this Court noted that "a court does not err merely because it does not give an instruction in exactly the words a defendant submits," and held that, "under any standard of review," the District Court did not err in giving its theory of the defense instruction. Id. at 178, 181.

8

Wiltshire argues that the model instruction given by the District Court can reasonably be read to imply that a jury should decline to find constructive possession only when the evidence shows accidental, unknowing presence near an item, such that knowing presence near an item is sufficient. We disagree, and think it clear that the model jury instruction used by the District Court conveyed all of the required elements necessary to prove constructive possession: knowledge, and dominion and control. See Iafelice, 978 F.2d at 96. The District Court instructed the jury that "[i]f you find that Mr. Wiltshire either had actual possession of the firearm or had the power and intention to exercise control over it, even though it was not in his actual, physical possession, that he had the ability to take actual possession of the firearm when he wanted to do so, you may find that the government has proved possession." App. 537-38 (emphasis added). The District Court also instructed that "[t]he government must prove beyond a reasonable doubt that Mr. Wiltshire knowingly possessed the firearm described in the indictment. This means that he possessed the firearm purposely and voluntarily and not by accident or mistake. It also means that he knew that it was a firearm." App. 538 (emphasis added). These two instructions clearly convey the idea that, in order to prove constructive possession, the Government must prove that Wiltshire knew of the existence and his possession of the firearm and that he had the power and intention to exercise control over it. There is no implication in these instructions that proof of knowledge without dominion and control, or vice versa, is sufficient. This is a correct, unambiguous statement of the law, and, accordingly, there was no error in the instruction. See

9

Sussman, 709 F.2d at 178. We therefore hold that the District Court did not abuse its discretion in utilizing this Court's model jury instruction.

We also hold that the District Court did not abuse its discretion in re-reading the model instruction in response to the jury's question. The District Court exercises "wide discretion" in fashioning its responses to questions from the jury. Arizona v. Johnson, 351 F.3d 988, 994 (9th Cir. 2003). Although it is true that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy," Bollenbach v. United States, 326 U.S. 607, 612-13 (1946), this does not require that the District Court proffer the exact response requested by the defendant, especially when the initial jury instructions were legally correct and unambiguously conveyed the requirements for proof of possession. Cf. United States v. Southwell, 432 F.3d 1050, 1053 (9th Cir. 2005) (holding that the District Court abused its discretion in responding to a jury's question by re-reading instructions that could "reasonably" have been interpreted "in one of two ways"). In the instant case, though Wiltshire requested that the District Court respond to the jury's question about knowledge by giving a supplementing instruction that mere knowledge is not enough to constitute possession, this idea was reasonably and adequately conveyed by the initial instructions given by the District Court, such that the Court was well within its discretion in re-reading those legally correct instructions.

B.

Wiltshire also argues that the District Court erred in relying on CODs to prove his prior convictions for purposes of a sentence enhancement under the ACCA. The ACCA subjects a defendant convicted of being a felon in possession of a firearm to a 15-year

mandatory minimum sentence if he has at least three prior convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e).[3]

In order to determine whether prior convictions qualify as predicates under the ACCA, we "'look only to the fact of conviction and the statutory definition of the prior offense'" and do not delve into the facts underlying prior convictions. United States v. Tucker, 703 F.3d 205, 209 (3d Cir. 2012) (quoting Taylor v. United States, 495 U.S. 575, 602 (1990)). However, when it is not immediately clear whether a defendant has been convicted of a predicate under the ACCA, the District Court may look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparative judicial record of this information" to ascertain whether the elements of the offense the defendant pled guilty to or was convicted of were sufficient to qualify the offense as a predicate crime for ACCA purposes. Shepard v. United States, 544 U.S. 13, 26 (2005). Facts considered at sentencing generally must be proved by a preponderance of the evidence. United States v. Watts, 519 U.S. 148, 156 (1997).

In the instant case, the Government asserted that Wiltshire had three prior convictions that qualify as predicates under the ACCA: a 1989 New York conviction for

---

[3] A "violent felony" is defined to include, inter alia, any crime punishable by more than one year in prison that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). A "serious drug offense" is defined as a drug trafficking crime punishable by a maximum term of imprisonment of ten years or more. 18 U.S.C. § 924(e)(2)(A).

attempted second-degree robbery (N.Y. Penal Law §§ 110, 160.10), a 1989 New York conviction for second-degree robbery (N.Y. Penal Law § 160.10), and a 2002 Pennsylvania drug-trafficking conviction (35 P.S. § 780-113(a)(30)). To prove these convictions, the Government proffered CODs, fingerprint records, and transcripts of calls made from pretrial detention by Wiltshire referencing prior convictions.

Wiltshire does not dispute that these statutes qualify as ACCA predicates, but argues that the Government has presented insufficient evidence to prove he was convicted of these offenses. Specifically, Wiltshire takes issue with the Government's reliance on CODs.

Wiltshire correctly notes that in United States v. Hernandez, 218 F.3d 272, 279 (3d Cir. 2000), we held that when "the accuracy of a [COD] . . . is seriously called into question, the federal sentencing judge may . . . look to the plea colloquy in the state court to resolve the accuracy of the [COD]." See generally United States v. Green, 480 F.3d 627, 632-33 (2d Cir. 2007) (holding that a New York COD is "the type of judicial record that the Shepard Court indicated a federal district court may consider in an effort to determine the nature of the New York offense to which a federal defendant has previously pleaded guilty"). Relying upon our holding in Hernandez, Wiltshire argues that CODs "are so unreliable, in general and in this particular case, that they cannot be trusted to accurately reflect the statutes under which [he] was convicted." Wiltshire Reply Br. 12.

We reject Wiltshire's argument that CODs are unreliable as a matter of law and cannot be relied upon generally in cases such as the present case. Prohibiting the use of

CODs as a matter of law would conflict with the holdings of this Court and others explicitly permitting the use of CODs in proving prior convictions. See Hernandez, 218 F.3d at 279; Green, 480 F.3d at 632-33; United States v. Neri-Hernandes, 504 F.3d 587, 590-92 (5th Cir. 2007). We decline to hold that CODs are unreliable as a matter of law.

In addition, despite Wiltshire's argument to the contrary, we doubt that the accuracy of the COD from the May 12, 1989 arrest for second degree robbery was even seriously called into question. Wiltshire notes that the COD reports a conviction under N.Y. Penal Law § 160.10(1), second degree robbery committed together with another offender. The fingerprint card for the arrest states that only one offender was involved, rendering § 160.10(1) inapplicable. However, both the fingerprint card and the COD state that Wiltshire was convicted of § 160.10(1), so the number of offenders listed on the fingerprint card may reasonably have been error. In any event, this discrepancy is immaterial, as every violation of § 160.10, whether committed with a confederate or not, is considered a "violent felony" for purposes of the ACCA.

We note that the District Court did not ignore any evidence presented by Wiltshire; rather, Wiltshire failed to present any evidence in response to the evidence presented by the Government. Accordingly, we hold that the District Court did not clearly err in finding that the Government proved the fact of Wiltshire's prior convictions by a preponderance of the evidence.

## C.

Third, Wiltshire argues that 18 U.S.C. §§ 922(g)(1) and 931(a) are facially unconstitutional, as the intrastate possession of a firearm or body armor does not

13

constitute a valid exercise of Congress's authority under the Commerce Clause. Wiltshire also argues that these statutes are unconstitutional as applied to this case, because the evidence established only that the gun and body armor seized at 663 Gordon Street traveled in interstate commerce at some point, and this is insufficient to satisfy the interstate commerce element of 18 U.S.C. §§ 922(g)(1) and 931(a).

Wiltshire acknowledges that this Court rejected these arguments in <u>Singletary</u>, 268 F.3d 196. In <u>Singletary</u>, we upheld the constitutionality of 18 U.S.C. §§ 922(g)(1) and stated that evidence that a "gun had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element" of 18 U.S.C. § 922(g)(1). <u>Id.</u> at 204-05. Here, the Government presented evidence that both the gun and the body armor were produced outside Pennsylvania and therefore crossed a state line before being found in Wiltshire's possession. We are, accordingly, bound by this Court's precedent to find that the evidence was sufficient to satisfy the interstate commerce element, and Wiltshire raises this argument only to preserve it for purposes of appeal.

D.

Finally, Wiltshire argues that the District Court's use of the ACCA to apply a sentencing enhancement violated his Fifth and Sixth Amendment rights, as the application of the ACCA was based on facts – specifically the existence of previous convictions – that were neither charged in the indictment nor admitted or found by a jury beyond a reasonable doubt. Wiltshire argues that the rule of <u>Apprendi v. New Jersey</u>, 430 U.S. 466 (2000), requiring that an indictment charge and a jury determine facts

14

subjecting a defendant to a greater maximum sentence or a mandatory minimum sentence, should apply to the fact of a prior conviction.

Wiltshire acknowledges that current law exempts the fact of prior conviction from the Apprendi rule. In Almendarez-Torres v. United States, 523 U.S. 224, 239-47 (1998), the Supreme Court held that the Government need not prove beyond a reasonable doubt, as an element of the offense, that a defendant had prior convictions nor allege them in the indictment before using them to enhance the defendant's sentence. This Court has held that Almendarez-Torres remains binding law, and we are bound by its holding. See United States v. Ordaz, 398 F.3d 236, 240-41 (3d Cir. 2005). Wiltshire makes this argument solely to preserve it for appeal.

IV.

For the foregoing reasons, we will affirm the District Court's judgment of conviction and sentence.