

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-2-2001

# USA v. Singletary

Precedential or Non-Precedential:

Docket 00-3850

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"USA v. Singletary" (2001). *2001 Decisions.* Paper 225.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/225

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 2, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3850

UNITED STATES OF AMERICA

v.

JAMAAL ADEEM ATIF SINGLETARY,
a/k/a
JAMAL SINGLETARY
a/k/a
CURTIS SINGLETARY

      Jamaal Singletary,

      Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 00-cr-00199)
District Court Judge: The Honorable Charles R. Weiner

Submitted Under Third Circuit L.A.R. 34.1(a)
July 27, 2001

Before: ROTH, BARRY, and FUENTES, Circuit Judges

(Opinion Filed: October 2, 2001)

Maureen Kearney Rowley
 Chief Federal Defender
David L. McColgin
 Assistant Federal Defender
Federal Court Division
Defender Association of Philadelphia
Suite 540 West – The Curtis Center
Independence Square West
Philadelphia, PA 19106-2414

    ATTORNEYS FOR APPELLANT

Michael L. Levy
 United States Attorney
Robert A. Zauzmer
 Assistant United States Attorney
 Chief of Appeals
Lesley S. Bonney
 Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

    ATTORNEYS FOR APPELLEE

OPINION OF THE COURT

FUENTES, Circuit Judge:

Following a jury trial, defendant, Jamaal Singletary, was convicted on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. S 922(g)(1). On appeal, Singletary contends that the felon-in-possession statute is unconstitutional because the conduct it proscribes -- the intrastate possession of a firearm -- does not have a substantial effect upon interstate commerce, and thus does not constitute a valid exercise of Congress' authority under the Commerce Clause. Specifically, Singletary contends that, although in United States v. Gateward, 84 F.3d 670 (3d Cir. 1996), we upheld the constitutionality of S 922(g)(1) as a proper exercise of Congress' regulatory power under the Commerce Clause, that holding must be reconsidered in the wake of the Supreme Court's decisions in United States v. Morrison, 529

2

U.S. 598 (2000), and Jones v. United States, 529 U.S. 848 (2000). Because we conclude that those decisions do not undermine our prior construction of the felon-in-possession statute, we will reaffirm our holding in Gateward and affirm the judgment of the District Court.

I.

The relevant facts are not in dispute. During the evening of December 8, 1999, Police Officer Thomas Liciardello was watching a suspected stolen car in the area of Cobbs Creek Parkway and Larchwood Avenue in Philadelphia, Pennsylvania. At about 7:30 p.m., while watching the car, Liciardello saw a blue pick-up truck drive across the sidewalk and into the park located there. He saw Singletary, the driver, get out of the truck, fire two shots into the air with a silver handgun, and then jump back into the truck and drive on through the park. Liciardello radioed information about the truck, and Officers John Spence and Maurice Haughton began chasing the truck as it left the park. During the chase, Spence saw a gun tossed out the passenger side window. The officers stopped the truck a short distance later, and Officer Liciardello located the gun on the street.

On April 18, 2000, a grand jury in the Eastern District of Pennsylvania indicted Singletary on one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. S 922(g)(1). Specifically, he was charged with having "knowingly possessed in and affecting foreign and interstate commerce, a .38 caliber Taurus International revolver . . . loaded with four live rounds and two spent rounds of ammunition." On July 5, 2000, the District Court denied a defense motion to dismiss the indictment, rejecting Singletary's argument that the statute is constitutionally infirm both facially and as applied because it does not require that the act of gun possession have a substantial effect on interstate commerce.

At trial, the Government established through the undisputed expert testimony of Special Agent James J. Uvena of the Bureau of Alcohol, Tobacco & Firearms that the gun in question was manufactured in Brazil, imported

3

into the United States through Atlanta, Georgia, and eventually sent to a firearms dealer in Texas in 1973. No further documentation on the gun was available, and thus, the Government presented no evidence regarding when the gun had come into Pennsylvania. Additionally, the Government presented no evidence concerning any effect the gun had on interstate commerce. As for the other elements of the crime, Singletary stipulated that he had a prior felony conviction, and the issue of possession, while hotly contested at trial, is not germane to the issues before us on appeal.

At the close of the Government's case, defense counsel submitted a proposed jury instruction that would have required the Government to prove "[t]hat the possession of the firearm substantially [a]ffected interstate commerce." An additional proposed instruction would have given the jury the following definition of the phrase "in or affecting commerce":

> This means that the government must prove beyond a reasonable doubt that, the possession of the firearm in question, had a substantial effect on interstate commerce. In order to find that the possession of this weapon had the requisite impact on interstate commerce, you must find that the possession of the gun in question had a substantial relation to interstate commerce in and of itself.

The court denied the requested instructions and also barred defense counsel from arguing to the jury that the Government had failed to prove that the possession of the firearm had a substantial relation to interstate commerce. For its charge, the court instructed the jury that:

> [t]o prove that the firearm was possessed in or affecting interstate or foreign commerce, the Government must prove that at some time prior to defendant's possession of the firearm, the firearm had traveled in interstate or foreign commerce . . . that at any time prior to the date charged in the Indictment, the firearm crossed a state line.

The jury returned a guilty verdict. Defense counsel once again moved for a judgment of acquittal, which the court

4

denied on November 6, 2000. The court subsequently sentenced Singletary to 27 months' imprisonment, three years' supervised release, a special assessment of $100, and a fine of $200.

II.

On appeal, Singletary contends that the Supreme Court's recent Commerce Clause jurisprudence renders 18 U.S.C. S 922(g)(1), the felon-in-possession statute, unconstitutional, and therefore, his conviction invalid. In the alternative, he argues for a reversal because of insufficient evidence on the interstate commerce element, or for a new trial because of the District Court's erroneous jury instructions on that same element.[1]

The District Court exercised jurisdiction over this case under 18 U.S.C. S 3231, and we have appellate jurisdiction under 28 U.S.C. S 1291. Because Singletary challenges the constitutionality of S 922(g)(1), we will exercise plenary review over the District Court's assertion of federal jurisdiction. See United States v. Rodia, 194 F.3d 465, 469 (3d Cir. 1999) ("Our review of the statute's constitutionality is plenary, though we must respect Congress's ample discretion to determine the appropriate exercise of its Commerce Clause authority."), cert. denied , 529 U.S. 1131 (2000); accord United States v. One Toshiba Color Television, 213 F.3d 147, 151 (3d Cir. 2000) (en banc) ("Our review over constitutional issues is plenary."). Moreover, "[b]ecause each of [Singletary's] challenges is based on the district court's construction of statutes and case law, we will exercise plenary review." United States v. Cross, 128 F.3d 145, 147 (3d Cir. 1997).

A.

Under the Commerce Clause of the United States Constitution, Congress is empowered "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., art. I, S 8,

_____

1. Singletary moved for an initial en banc consideration of his appeal by this Court, but we denied that request.

5

cl. 3. Pursuant to this authority, Congress enacted the felon-in-possession statute, which provides, in relevant part:

> (g) It shall be unlawful for any person --
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. S 922(g)(1). The statute can be read to create three crimes for convicted felons: (1) "to ship or transport in interstate or foreign commerce . . . any firearm or ammunition"; (2) "to . . . possess in or affecting commerce, any firearm or ammunition"; and (3) "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Plainly, (1) shipping or transporting and (3) receiving any firearm or ammunition "in interstate or foreign commerce" are both distinct crimes. Notably, however, Congress did not use the phrase "in interstate or foreign commerce" when it criminalized possession. Instead, Congress merely employed the phrase "in or affecting commerce."

At the time the Supreme Court established what remains the governing jurisprudence on federalization of gun possession, the felon-in-possession statute, then codified at 18 U.S.C. S 1202(a), was phrased differently. Specifically, the "predecessor statute to S 922(g)(1)[ ] made any felon `who receives, possesses, or transports in commerce or affecting commerce . . . any firearm' guilty of a federal offense." United States v. Gateward, 84 F.3d 670, 671 (3d Cir. 1996) (quoting 18 U.S.C. S 1202(a) (repealed 1986)). In two key decisions, the Supreme Court addressed the interstate commerce aspect of this predecessor statute to S 922(g)(1).

First, in United States v. Bass, the Court construed 18 U.S.C. S 1202(a) against the Government's contention that the statute "banned all possessions and receipts of firearms by convicted felons, and that no connection with interstate

6

commerce had to be demonstrated in individual cases." 404 U.S. 336, 338 (1971). In rejecting the Government's expansive reading, the Court held that "the commerce requirement in S 1202(a) must be read as part of the `possesses' and `receives' offenses." Id. at 350. That is, the use of commas in the language of the statute implied an enumeration of related ideas, all modified by the phrase "in commerce or affecting commerce." The Court further opined that, "[a]bsent a clearer statement of intention from Congress than is present here, we do not interpretS 1202(a) to reach the `mere possession' of firearms" because otherwise, without "proof of some interstate commerce nexus in each case, S 1202(a) dramatically intrudes upon traditional state criminal jurisdiction." Id.

Nearly six years later, the Court in Scarborough v. United States had the opportunity to address squarely"whether proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce." 431 U.S. 563, 564 (1977). The Court accepted the Government's contention that it only need prove that "the firearm possessed by the convicted felon traveled at some time in interstate commerce." Id. at 568. Thus, the Scarborough Court established the proposition that the transport of a weapon in interstate commerce, however remote in the distant past, gives its present intrastate possession a sufficient nexus to interstate commerce to fall within the ambit of the statute. Because S 1202(a) is the predecessor to the current felon-in-possession statute, this statutory construction applies equally to S 922(g)(1).

B.

Distilled to its core, we construe the precise question raised by Singletary in this appeal to be whether the proposition established in Scarborough survives as a viable statutory construct in the wake of United States v. Lopez, 514 U.S. 549 (1995), United States v. Morrison , 529 U.S. 598 (2000), and Jones v. United States, 529 U.S. 848 (2000). Specifically, Singletary contends that the felon-in-possession statute is facially unconstitutional because the

7

conduct it proscribes -- the intrastate possession of a firearm -- does not have a substantial affect upon interstate commerce, and thus, does not constitute a valid exercise of Congress' authority under the Commerce Clause. Alternatively, as applied to his circumstances, Singletary maintains that the statute is unconstitutional because there was no evidence that his possession of the gun substantially affected interstate commerce, or indeed, that it had any effect whatsoever on commerce, interstate or intrastate. Consequently, Singletary argues that the District Court erred in failing to give the requested jury instructions regarding the Government's burden of proving that the possession of the gun substantially affected interstate commerce, and in barring defense counsel from arguing this point to the jury.

In Lopez, the Supreme Court addressed the constitutionality of the Gun-Free School Zones Act of 1990, 18 U.S.C. S 922(q)(1)(A), which made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." The Court concluded that Congress had exceeded its authority under the Commerce Clause in enacting this statute because the statute neither regulated a commercial activity (possession of a gun near a school) nor contained a requirement that the possession of a firearm in a school zone be connected in any way to interstate commerce. See 514 U.S. at 551, 567-68.

The Lopez Court initially reviewed the history of its Commerce Clause jurisprudence, stressing that Article I, S 8 of the Constitution gave Congress enumerated (and therefore limited) powers, particularly as against the antecedent powers of the states, and that an expansive construction of the Commerce Clause would effectively read out those limitations. See id. at 552-58. Consistent with this jurisprudence, the Court identified three broad areas that Congress may regulate under the Commerce Clause: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons and things in interstate commerce, even though the threat may only come from intrastate activities"; and (3)"those activities having a substantial relation to interstate

8

commerce." Id. at 558-59. In Lopez , the Court determined that the plain language of the regulation at issue placed it in the third category. See id. at 559. But the Court also noted that S 922(q) was "a criminal statute that by its terms has nothing to do with `commerce' or any sort of economic enterprise, however broadly one might define those terms." Id. at 561.

Next, the Court observed that "S 922(q) contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." Id. On this point, it distinguished its prior holding in Bass, noting that there it had found the requisite nexus to interstate commerce when the criminal statute contained a clause limiting its reach to the receipt, possession, or transfer of firearms in commerce. See id. at 561-62. As we explained above, Bass involved a challenge to the former 18 U.S.C. S 1202(a), the predecessor to today's S 922(g)(1). Thus, while the Supreme Court has never addressed S 922(g)(1) in its current form, it presumed that the former S 1202(a) would survive constitutional scrutiny if the Government provided evidence to show that the firearm was possessed or transported in commerce. See Bass, 404 U.S. at 351. The Court, of course, established in Scarborough the proposition that proof of a firearm's prior travel in interstate commerce demonstrated a sufficient nexus to commerce to justify federal prohibition. Thus, the Court in Lopez concluded that, "[u]nlike the statute in Bass, S 922(q) has no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." 514 U.S. at 562.

Finally, the Court examined the legislative history of the regulation, observing that the Government itself had conceded in its brief that " `[n]either the statute nor its legislative history contain[s] express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone.' " Id. at 562 (quoting Gov't Br. at 5-6). In the end, the Court rejected the Government's contention "that possession of a firearm in a school zone may result in violent crime and that violent crime can be expected to affect the functioning of the national economy"

9

because to accept it would require "pil[ing] inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." Id. at 563, 567.

A year after Lopez, we had the occasion to consider its implications for the felon-in-possession statute, S 922(g)(1). In United States v. Gateward, we stated that we did "not understand Lopez to undercut the Bass/Scarborough proposition that the jurisdictional element `in or affecting commerce' keeps the felon firearm law well inside the constitutional fringes of the Commerce Clause." 84 F.3d 670, 671 (3d Cir. 1996). Rather, we explained as follows:

> The Lopez Court invalidated S 922(q) because "by its terms [it] has nothing to do with `commerce' or any sort of economic enterprise, however broadly one might define those terms," and because "S 922(q) contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce."

Id. at 671-72 (quoting Lopez, 514 U.S. at 561). Thus, the Gateward Court, noting that the gun in question "had moved in interstate commerce," straightforwardly applied Scarborough and affirmed the conviction. Id. at 672. As Singletary correctly points out, however, our respect for the uniformity of decisions within this Court yields when a prior panel's holding conflicts with a holding of the Supreme Court. Mennen Co. v. Atl. Mut. Ins. Co. , 147 F.3d 287, 294 n.9 (3d Cir. 1998). Thus, the Supreme Court's Commerce Clause jurisprudence in criminal cases since Lopez necessitates a re-examination of our analysis in Gateward.

C.

In United States v. Morrison, the Supreme Court invalidated 42 U.S.C. S 13981, a statute that federalized "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." See 529 U.S. at 607-27. Although the Court acknowledged its statement in Lopez

10

that " `we have upheld a wide variety of congressional Acts regulating intrastate economic activity where we have concluded that the activity substantially affected interstate commerce,' " it stressed that "a fair reading of Lopez shows that the noneconomic, criminal nature of the conduct at issue was central to our decision in that case." Id. at 610 (quoting Lopez, 514 U.S. at 559). The Court further explained that "Lopez's review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor." Id. at 611; see also id. at 613 (observing that "thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature").

Analogizing to the statute at issue in Lopez, the Court recognized that "S 13981 contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." Id. Indeed, the Court noted that "such a jurisdictional element would lend support to the argument that S 13981 is sufficiently tied to interstate commerce . . . ." Id. Consequently, the Court read out the "costs of crime" and "economic effects" that Congress had canvassed in the extensive legislative history of the statute:

> Given these findings and petitioners' arguments, the concern that we expressed in Lopez that Congress might use the Commerce Clause to completely obliterate the Constitution's distinction between national and local authority seems well founded. The reasoning that petitioners advance seeks to follow the but-for causal chain from the initial occurrence of violent crime (the suppression of which has always been the prime object of the States' police power) to every attenuated effect upon interstate commerce. If accepted, petitioners' reasoning would allow Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption.

Id. at 615 (citation omitted).

11

Hence, after Morrison, the "economic effects" rationale and congressional findings regarding such effects alone will not serve to save a criminal statute under the Commerce Clause if no commercial activity is, in fact, involved. Notably, the Morrison Court (while not expressly addressing it) implicitly left intact the proposition set forth in Scarborough. Namely, to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and interstate commerce, the Government need only prove that the possessed firearm previously traveled in interstate commerce. See id. at 658 (Breyer, J., dissenting) (noting that the Court reaffirmed Congress' power "to enact laws that satisfy a commerce-related jurisdictional prerequisite -- for example, that some item relevant to the federally regulated activity has at some time crossed a state line" and citing, among other decisions, Bass and Scarborough).

Seven days after the Supreme Court announced Morrison, it rendered its decision in Jones v. United States, construing a criminal statute drafted with an explicit interstate commerce jurisdictional element. Specifically, that statute, 18 U.S.C. S 844(i), makes it a federal crime to damage or destroy, "by means of fire or an explosive, any . . . property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." Jones had "tossed a Molotov cocktail through a window into a home in Fort Wayne, Indiana, owned and occupied by his cousin." 529 U.S. at 851. He was thereafter indicted and convicted of this federal arson charge, and the Seventh Circuit affirmed his conviction.

The Supreme Court granted certiorari, framing the question presented as:

> Whether, in light of United States v. Lopez, and the interpretive rule that constitutionally doubtful constructions should be avoided, 18 U.S.C. S 844(i) applies to the arson of a private residence; and if so, whether its application to the private residence in the present case is constitutional.

Id. at 852 (internal citations omitted). In the Supreme Court, the Government argued that the Fort Wayne

12

residence was indeed "used" in at least three activities "affecting commerce" because: (1) the house was "collateral to obtain and secure a mortgage from an Oklahoma lender"; (2) the homeowner insured the residence with "a casualty insurance policy from a Wisconsin insurer"; and (3) the dwelling received "natural gas from sources outside Indiana." Id. at 855. However, the Court (in an opinion authored by Justice Ginsburg) rejected these arguments, reasoning that, "[w]ere we to adopt the Government's expansive interpretation of S 844(i), hardly a building in the land would fall outside the federal statute's domain." Id. at 857.

Importantly for our analysis (and particularly striking because Justice Ginsburg was a Lopez dissenter), the Court wrote: "Given the concerns brought to the fore in Lopez, it is appropriate to avoid the constitutional question that would arise were we to read S 844(i) to render the `traditionally local criminal conduct' in which petitioner Jones engaged `a matter for federal enforcement.' " Id. at 858 (quoting Bass, 404 U.S. at 350). The language Justice Ginsburg quoted came from Bass, and two sentences later, she again quoted Bass when she wrote: "We have cautioned, as well, that `unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance' in the prosecution of crimes." Id. (quoting Bass, 404 U.S. at 349). Thus, to avoid Lopez concerns, as well as to maintain "the federal-state balance" as a matter of statutory construction, the Court held that the statute "covers only property currently used in commerce or in an activity affecting commerce." Id. at 858, 859. Notably, in so holding (although without explicitly stating), the Supreme Court chose not to extend the proposition established in Scarborough to home ownership, as the Government had invited it to do. That is, the Court did not expand Scarborough to mean that a piece of property, used in interstate commerce at some time in the past, gave its current intrastate use a sufficient nexus to interstate commerce to fall within the ambit of the arson statute.

Despite the continued vitality of Scarborough , Singletary would have us construe S 922(g)(1) without its benefit. That

13

is, he urges that we read the Supreme Court's use in Jones of the phrase "currently used in commerce or in an activity affecting commerce" as suggesting that the interstate quality of a firearm, at some time in the past, has no bearing on its present day status for purposes of fulfilling the interstate commerce element. According to Singletary, such a construction would also avoid Lopez and Morrison implications by restricting the scope of the statute to apply only to guns and ammunition that are currently in or affecting commerce. In short, abandoning Scarborough would permit us to conclude that Singletary's possession of the gun was neither "used in commerce" nor had any present or imminent interstate aspect. Moreover, we would be constrained to conclude that the possession of the gun did not occur in any commercial or transactional context. His conviction therefore could not stand because he essentially would have committed no federal crime under S 922(g)(1).

Missing from Singletary's analysis, however, is the recognition that, while Lopez and Morrison were questions concerning the power of Congress to regulate activities substantially affecting interstate commerce, S 922(g)(1) regulates the possession of goods moved in interstate commerce. The jurisdictional element in S 922(g)(1) distinguishes it from the statutes considered in Lopez and Morrison. Section 922(g)(1), by its very terms, only regulates those weapons affecting interstate commerce by being the subject of interstate trade. It addresses items sent in interstate commerce and the channels of commerce themselves, delineating that the latter be kept clear of firearms. Thus, an analysis of the kind utilized in Lopez or Morrison is neither appropriate nor needed.

Jones provides no further insight for us. While the law challenged in Jones did have a jurisdictional element, the challenge there involved the alleged use of a residence in activities affecting interstate commerce. The rationale used by the Jones Court to hold that the federal arson statute only encompassed "property currently used in commerce or in an activity affecting commerce" has little impact on the assessment of whether firearms moved through interstate commerce are subject to congressional regulation. The

14

analogy urged by Singletary is made even more incongruous because the Jones Court neither expressly overruled Scarborough nor rejected its directly applicable proposition relevant to interpreting the gun possession statutes.

Accordingly, our prior decision in Gateward remains the law of this circuit, and we are bound to respect it, absent an en banc consideration. See 3d Cir. I.O.P. 9.1; Am. Civil Liberties Union of N.J. ex rel. Lander v. Schundler , 168 F.3d 92, 98 n.6 (3d Cir. 1999). In that vein, as we noted earlier in the margin, we denied Singletary's request for an initial en banc consideration by this Court. Moreover, even if there were merit to Singletary's argument that the Supreme Court's trinity of Commerce Clause decisions have somehow weakened the precedential value of Scarborough, we may not precipitate its decline. The Supreme Court itself has admonished lower courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court itself " `the prerogative of overruling its own decisions.' " Agostini v. Felton, 521 U.S. 203, 237 (1997) (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989)). We have always sought to adhere strictly to that counsel. See United States v. Abuhouran, 161 F.3d 206, 215 n.9 (3d Cir. 1998), cert. denied, 526 U.S. 1077 (1999); Maldonado v. Houstoun, 157 F.3d 179, 190 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999); United States v. Bishop, 66 F.3d 569, 588 n.28 (3d Cir. 1995); Swin Resource Sys., Inc. v. Lycoming County, 883 F.2d 245, 255 (3d Cir. 1989).

We considered S 922(g)(1)'s post-Lopez constitutionality in Gateward and decided in favor of the Government. Morrison and Jones give no reason beyond what was already present in Lopez to conclude that S 922(g)(1) lies beyond Congress' Commerce Clause power. Indeed, our conclusion in Gateward was uniformly shared by eight other circuits at the time of that decision. See 84 F.3d at 672 (citing cases from the Second, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits). Our present reaffirmation of that holding joins those same eight circuits, all of which have readdressed this issue in the wake of Morrison and

15

Jones. See United States v. Dupree, 258 F.3d 1258, 2001 WL 835847, at *1 & n.1 (11th Cir. July 25, 2001); United States v. Stuckey, 255 F.3d 528, 529–30 (8th Cir. 2001); United States v. Gallimore, 247 F.3d 134, 137–38 (4th Cir. 2001); United States v. Davis, 242 F.3d 1162, 1162–63 (9th Cir. 2001) (per curiam), petition for cert. filed, No. 00–10772 (U.S. June 18, 2001); United States v. Santiago , 238 F.3d 213, 216–17 (2d Cir. 2001) (per curiam), cert. denied, 121 S. Ct. 2016 (2001); United States v. Dorris, 236 F.3d 582, 584–86 (10th Cir. 2000), cert. denied, 121 S. Ct. 1635 (2001); United States v. Napier, 233 F.3d 394, 399–402 (6th Cir. 2000); United States v. Wesela, 223 F.3d 656, 659–60 (7th Cir. 2000), cert. denied, 121 S. Ct. 1145 (2001). We are aware of no appellate court that has decided differently.

III.

Accordingly, we conclude that the proof in this case that the gun had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element, and therefore, we will affirm the judgment of the District Court.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

16