**UNITED STATES of America**

v.

**Erick James PICKFORD, Appellant.**

No. 06–3179.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 27, 2007.

Filed: Oct. 31, 2007.

---

Robert L. Eberhardt, Kelly R. Labby, Office of United States Attorney, Pittsburgh, PA, for Appellee.

Karen S. Gerlach, Office of Federal Public Defender, Pittsburgh, PA, for Appellant.

Before: AMBRO, JORDAN and ROTH, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Erick James Pickford was convicted after a non-jury trial of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and possession of a firearm with an altered serial number, in violation of 18 U.S.C. § 922(k). Pickford asserts on appeal that the District Court erred in denying his motion to suppress because his warrantless arrest was conducted without probable cause, and that his conviction should be reversed because 18 U.S.C. § 922(g) is unconstitutional. For the reasons that follow, we will affirm.

### I.

On July 19, 2004 at about 9:30 a.m., Pennsylvania State Police received a report of a domestic dispute involving a firearm in the village of Marguerite, Pennsylvania. Trooper Edward Malloy was assigned to respond to the incident, but two other troopers, Angelo Bonesio and Donald Shirey, arrived at the scene first. Trooper Bonesio testified that, when he and Trooper Shirey arrived, they saw a woman, Dusty Jo Lang, standing on the front porch of the house, and they motioned for her to come toward them. Lang told Bonesio that, on the previous night, she and her boyfriend, Erick Pickford, had a fight. He left, but returned in the morning with a gun, which he had pointed at her while demanding oral sex. He later relented, and fell asleep. Lang further explained to Bonesio that, while Pickford was asleep, she had called 911 and reported the incident. She also said that Pickford had since awakened and seen the Troopers arrive and so had taken the gun and left through the back door of the house.

Trooper Bonesio testified that he and Trooper Shirey then decided to go to the back of the house to look for Pickford.[1] When he got to the back of the house, Bonesio testified that he saw a white male in the alleyway immediately behind the house. Bonesio and Shirey called to the man, and then approached him and asked his name. The man said that his name was Erick, and then that his name was Tim. According to Bonesio, the man was "acting extremely nervous. His hands were in and out of his pockets behind his back." (Joint Appendix ["JA"] at 68.) Bonesio testified that, while he and Shirey attempted move closer to the man, Trooper Malloy arrived.

At that point, Bonesio heard Malloy "yell[ ] out, that's him. That is Erick Pickford. I've dealt with him before." (JA at 69) Bonesio then told Pickford that he was under arrest. While taking Pickford into custody, there was a struggle during which Pickford apparently tried to pull a gun out of his pocket. Bonesio and Shirey took Pickford to the ground, wrestled the gun from him, and placed him under arrest.

Trooper Malloy's version of events is slightly different from Trooper Bonesio's. Malloy testified that when he arrived at the house, Bonesio and Shirey were still across the street from the house, talking to Lang. Malloy testified that he saw Bonesio and Shirey go to the back of the house, and that he had a conversation with Shirey as the two walked toward the house. Malloy stated that he then went to the rear of the house after Bonesio and Shirey, and saw Bonesio and Shirey in the alley talking to Pickford.[2] Malloy testified that Pickford's back was to him, but that he heard

him identify himself as "Tim." At that point, Malloy testified that he said to Bonesio and Shirey "What's he saying his name is?". (JA at 108) Malloy said that Pickford turned to face him on hearing his question, and Malloy recognized him and said "that's Erick" and "[t]hat's who we are looking for."[3] (JA at 108–09.) Malloy then lost visual contact with Bonesio, Shirey, and Pickford.

After his arrest, Pickford was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and § 924(e), and possession of a firearm with an altered serial number, in violation of 18 U.S.C. § 922(k). Pickford filed a motion to dismiss, asserting that 18 U.S.C. § 922(g) is unconstitutional because it is beyond Congress's Commerce Clause power. Pickford conceded, however, that his argument is foreclosed by prior Third Circuit decisions, including *United States v. Singletary*, 268 F.3d 196 (3d Cir.2001). The District Court denied the motion.

Pickford also filed a motion to suppress, asserting that his warrantless arrest violated the Fourth Amendment, and that, therefore, the fruits of the seizure incident to his arrest should be suppressed. Two suppression hearings were held. Trooper Bonesio testified at the first hearing, and Trooper Malloy at the second. The District Court denied the motion to suppress, noting that the victim had given information about the domestic assault to Bonesio and Shirey and that Trooper Malloy had identified Pickford, all of which provided probable cause for Pickford's arrest.

---

1. Bonesio also testified that he and Shirey were the only troopers on the scene at that time.

2. Malloy also testified that he had learned, at some point, that the person they were looking for was Erick Pickford.

3. Malloy stated that he knew Pickford both from a prior arrest and because Pickford had worked for a towing business used by the police.

Pickford waived his right to a jury trial, and the District Court conducted a one-day bench trial on December 12, 2005. The parties made the suppression hearing testimony of Troopers Bonesio and Malloy part of the trial record, and Pickford stipulated that he had previously been convicted of a crime for which the term of imprisonment exceeded one year. Pickford also testified that he had possessed a firearm on July 19, 2004, the date he was arrested. The parties further stipulated that the gun was not manufactured in Pennsylvania, and that the serial number on the gun had been obliterated. Based on the testimony and stipulated evidence, the Court found Pickford guilty of both counts of the indictment. Pickford now appeals, challenging the denial of his suppression motion and the constitutionality of 18 U.S.C. § 922(g).

## II.

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction over the final order of the District Court under 28 U.S.C. 1291. On the issue of whether probable cause existed for Pickford's arrest, we review the District Court's findings of fact for clear error, and its legal conclusion *de novo. United States v. Myers,* 308 F.3d 251, 255 (3d Cir.2002).

### A.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). Determining whether "probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene." *United States v. Glasser,* 750 F.2d 1197, 1206 (3d Cir.1984). A court must then "determine whether the objective facts available to the officers at the

time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *Id.; see also Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) ("To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause[.]") (internal citations and quotation marks omitted).

█ Pickford asserts that his warrantless arrest violated the Fourth Amendment because the arresting officers, Bonesio and Shirey, lacked probable cause to believe that he was Erick Pickford. Pickford bases his argument on what he asserts are inconsistencies between the testimony of Trooper Bonesio and that of Trooper Malloy. Although there are some minor discrepancies between the troopers' accounts, it was not clear error for the District Court to determine that Malloy knew Pickford and identified him prior to the arrest. As the District Court pointed out, the inconsistencies to which Pickford points go only to "minor details." Having heard Malloy's identification and the information relayed by Ms. Lang, Bonesio and Shirey had probable cause to arrest Pickford. Thus, we will affirm the decision of the District Court denying Pickford's motion to suppress.

### B.

█ Pickford also argues that his conviction should be reversed because the felon-in-possession statute, 18 U.S.C. § 922(g), is an impermissible use of Congress's power under the Commerce Clause of the United States Constitution. That argument, however, has already been rejected by this Court in *Singletary,* 268 F.3d 196, which found that § 922(g) is

constitutional. *Id.* at 205 ("[W]e conclude that the proof in this case that the gun had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element[.]").[4] We will not reconsider that decision here. 3d Cir. Internal Operating Procedure 9.1 ("[T]he holding of a panel in a precedential opinion is binding on subsequent panels.").

### III.

Accordingly, we will affirm the judgment of the District Court.

---

**4.** Even Pickford recognizes this rejection, and states that he makes the argument that § 922(g) is unconstitutional only to preserve the issue for *en banc* or Supreme Court review.