NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 10-1656
_____

UNITED STATES OF AMERICA

v.

ALPHONSO STEED,
                              Appellant

On Appeal from the United States District Court
for the District of New Jersey
No. 1-08-cr-00837-001
District Judge: Honorable Robert B. Kugler

Submitted Pursuant to
Third Circuit LAR 34.1(a)
September 20, 2010

Before: McKee, *Chief Judge*, Ambro and Chagares, *Circuit Judges*.

(Opinion Filed: September 27, 2010)

MCKEE, *Chief Judge*

Alphonso Steed appeals the district court's denial of his motion to suppress

evidence that was used to secure his conviction for being a felon in possession of a

firearm in violation of 18 U.S.C. § 922(g). For the reasons that follow, we will affirm the

order of the district court.

1

# I.

Inasmuch as we are writing primarily for the parties, we need not recite the procedural or factual background of this case except insofar as may be helpful to our brief discussion.

The district court held a hearing on Steed's suppression motion and heard the testimony of Officer Leonard Breaux. He testified that he and his partner were patrolling a high crime area at 2:30 a.m. in plain clothes and in an unmarked police car, when they saw Steed and a companion walking down the street about seven or eight car lengths ahead of them. The men caught the officers' attention because they were the only people on the street. When Steed's companion saw the car, he stopped and immediately started walking in the other direction. Steed, who had been walking and talking on his cell phone, then yelled into his phone: "Come and get me out of here. I got to get out of here now. I'm on Sixteenth Street." Supp. App. at 25. The officers drove up to Steed; Breaux identified himself as a police officer and asked to speak to Steed. Steed initially complied and began walking toward the police officer. However, when he got about half-way to the unmarked car, Steed dropped the phone and "took off running south bound." *Id*. at 26. As Steed was running, Breaux saw him "clutching or holding his waist," and Breaux yelled for him to stop. Steed ignored the officer and ran into an empty lot. During the ensuing pursuit, Steed slipped and was apprehended after the pursuing officers tackled him to the ground. Breaux testified that there were no lumps in Steed's clothing, but he

saw a gun as Steed was being tackled to the ground. *Id*. at 30.

On cross-examination, Breaux stated that he became suspicious that something was wrong when Steed's companion turned and walked away, and when Steed began yelling into his cell phone. *Id.* at 43. At that point, Breaux wanted more information, which was why he asked Steed to approach the unmarked police car. *Id.* Breaux testified on cross-examination that he did not identify himself as a police officer until he began getting out of the car, and that his badge was not visible. *Id*. at 40, 43. When Steed began running and dropped his cell phone, Breaux suspected that he was involved in a crime because Steed was holding his waist in a manner that suggested that he was trying to hold onto a weapon. *Id*. at 46.[1] Once the officers saw the gun, they placed Steed in handcuffs and one of the officers was then able to safely remove the gun from Steed and place him under arrest. *Id*. at 67.

The district court concluded that Steed recognized the unmarked car as a police vehicle, and defense counsel did not counter the characterization of the neighborhood as a "high crime" area. The district court agreed that Steed's behavior was "unusual," and concluded that that was sufficient evidence to allow the police to investigate further. The court accepted Breaux's account of seeing Steed holding his waist in a manner that suggested that he (Steed) was carrying a firearm as he ran. Accordingly, the court ruled

---

[1] Breaux added that, in his eighteen years of experience as a police officer, he had learned that persons who clutched their waist, as Steed was doing, were often carrying weapons in their waistband.

3

that the police were justified in bringing Steed to the ground so that they could further investigate. During the course of doing so, they saw Steed's gun in plain view tucked in his waistband.

Steed was arrested for illegally possessing a firearm and was subsequently convicted by the court in a waiver trial on stipulated facts. This appeal followed.[2]

**II.**

In *Terry v. Ohio*, the Supreme Court held that brief investigative stops were "seizures" subject to Fourth Amendment protection, and that a police officer may conduct such a stop only if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. 1, 21 (1968).

Under *Terry*, we must first determine when Steed was seized and "then whether that seizure was justified by reasonable, articulable facts known to [Breaux] [at that] time that indicated that [Steed] was engaged in criminal activity." *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003). In judging the reasonableness of stops, courts must ask if "the facts available to the officer at the moment of the seizure . . . warrant a [person] of reasonable caution in the belief that criminal activity may be afoot." *Id.* (citing *Terry*, 392

---

[2] The district court had subject matter jurisdiction under 18 U.S.C. § 3731 and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the district court's findings of fact is for clear error; our review of the district court's conclusions of law is plenary. *United States v. Johnson*, 592 F.3d 442, 446-47 (3d Cir. 2010).

4

U.S. at 21-22, 30). An officer is permitted to draw inferences and deductions from prior experience and training. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The inquiry into the reasonableness of an officer's stop under *Terry* turns on "the totality of the circumstances." *United States v. Cortez*, 449 U.S. 411, 417 (1981). "It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

Here, Steed and the government agree that he was not "seized" for *Terry* purposes until he was tackled. Although Steed also argues that the officers were unjustified in chasing him, the Fourth Amendment is not implicated until a seizure occurs. Steed concedes as much. He also concedes that this did not happen until he was tackled. *See id.* at 497-48 (explaining when a seizure occurs).

The government argues that the following factors were sufficient to create the reasonable suspicion required for a *Terry* stop: (1) Steed was in a high crime area late at night; (2) he and another male were the only people on the street; (3) he and another male walked in opposite directions upon seeing the unmarked police car; (4) he yelled into his cell phone for someone to "come and get" him; (5) he initially moved toward the unmarked car but then dropped his cell phone and ran; (6) he held his side as he ran; and (7) the handle of the gun was visible as he was falling to the ground before he was tackled.

5

Although we do not agree that all of these factors are relevant,[3] we do agree that the totality of circumstances support a reasonable suspicion on the part of the police officers that justified their efforts to investigate. Once they actually caught Steed so that they could conduct an investigation, the gun in his waistband was clearly visible. At that point, what had only been a reasonable suspicion to investigate rose to probable cause to arrest. *See United States v. Bonner*, 363 F.3d 213 (3d Cir. 2004).[4]

Accordingly, we believe it is clear under our decision in *Bonner* that the officers were justified in stopping Steed under *Terry*, and that once they did, they had probable cause to arrest him for the gun that they saw during the course of the struggle (if not before).

## III.

For the reasons set forth above, we will affirm the district court's denial of Steed's suppression motion.[5]

---

[3] For example, we are skeptical about the relevance of relying on the fact that Steed and his companion were the only ones on the street. Moreover, by attempting to also rely on the lateness of the hour, the fact that they were the only ones on the street is actually counted twice. It is fair to assume that they were the only ones on the street because of the hour.

[4] It is not clear whether the officers actually saw the gun before Steed was tackled. Under New Jersey law, possession of a firearm under these circumstances is presumed illegal. *See* N.J. STAT. ANN. §§ 2C:39-2(b) and 2C:39-5.

[5] Steed also argues that the government failed to allege or prove that his possession of the firearm affected interstate commerce. However, he wisely concedes that this issue is settled against him and that he is merely making his argument to preserve it. *See United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001). It is preserved.