NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3715
_____

UNITED STATES OF AMERICA

v.

AXEL GOMEZ,
                    Appellant
_____


On Appeal from the United States District Court
for the  Eastern District of  Pennsylvania
District Court  No. 2-10-cr-00321-001
District Judge: The Honorable Gene E. K. Pratter


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 7, 2014

Before: SMITH, VANASKIE, and SHWARTZ, *Circuit Judges*

(Filed: August 8, 2014)

_____

OPINION
_____


SMITH, *Circuit Judge*.

Following a jury trial in the United States District Court for the Eastern District of Pennsylvania, Axel Gomez was convicted of various crimes, including 21 U.S.C. § 841 (distribution of cocaine and heroin), 21 U.S.C. § 846 (conspiracy), 18 U.S.C. § 924(c) (possession of a firearm in furtherance of drug trafficking offense), and 18 U.S.C. § 922(g) (possession of a firearm by a convicted felon). On appeal, Gomez challenges these convictions on two grounds: (1) that police violated his Fourth Amendment rights by using pen registers and trap and trace devices without a warrant, and (2) that the evidence adduced at trial was insufficient to sustain a conviction for conspiracy under 21 U.S.C. § 846.[1] For the reasons that follow, we will affirm the judgment of the District Court.

I.

The DEA began investigating Gomez for drug distribution in 2009. In May 2009, the DEA arranged the sale of 20 grams of heroin from Gomez to a government informant. This informant provided the DEA with the number to Gomez's cellular telephone, and from July 9, 2009, to at least August 18, 2009, the

---

[1] Gomez raises two other issues, but acknowledges that they are foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and *United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001), and presents them only for purposes of preservation. They are: (1) his Fifth/Sixth Amendment rights were violated when he was exposed to greater punishment based on a putative prior conviction that was neither charged in the indictment nor proved to the jury beyond a reasonable doubt; and (2) the Commerce Clause does not authorize federal regulation of firearm possession based solely on the gun's one-time travel in interstate commerce.

DEA used a pen register[2] and a "trap and trace" device[3] to monitor this phone's activity pursuant to court orders issued under 18 U.S.C. § 3123. These devices allowed the DEA to record a large amount of call data, such as the telephone numbers dialed by Gomez, the telephone numbers of persons who called Gomez, and the time of day and duration of these communications. Importantly, all of this information was disclosed to Gomez's cell phone carrier, Sprint Corporation, when the calls were placed. This call data revealed that Gomez regularly communicated with suspected drug traffickers and individuals using prepaid phones, which suggested that Gomez was involved in the distribution of illegal drugs. During this period, the DEA also successfully arranged and recorded multiple drug purchases from Gomez to confidential informants.

Using the call data and the evidence obtained through the undercover purchases, the DEA obtained an order for a wiretap and began intercepting and recording Gomez's cell phone conversations on August 24, 2009. On September 12, 2009, Gomez abruptly stopped using the tapped phone. A confidential informant provided the DEA with Gomez's new cell phone number and the DEA

---

[2] A pen register records outgoing dialing information from the subject's phone (*i.e.*, what numbers the subject dialed, when he dialed them, whether the call was connected, and the duration of the call). *See* 18 U.S.C. § 3127(3) (defining pen register).

[3] A "trap and trace" device records incoming dialing information to the subject's phone (*i.e.*, when the caller dialed the subject's number, whether the call was connected, and the duration of the call). *See* 18 U.S.C. § 3127(4) (defining trap and trace device).

obtained authorization for a wiretap for the new phone. Both wiretaps yielded additional evidence that Gomez was engaged in the distribution of illegal drugs.

Using all of the foregoing evidence, the DEA obtained and executed a search warrant for Gomez's apartment, where they recovered almost $6,000 in cash, drug packaging materials and a digital scale, and a loaded .40 caliber handgun with an obliterated serial number. Thereafter, Gomez was indicted on charges of distribution of controlled substances, conspiracy, and possession of a firearm in connection with drug trafficking.

Prior to trial, Gomez moved to suppress the introduction of much of the foregoing evidence, arguing that the DEA violated his Fourth Amendment rights by engaging in extensive call pattern surveillance without a warrant. The District Court denied this motion, concluding that Gomez's argument was squarely foreclosed by *Smith v. Maryland*, 442 U.S. 735 (1979).

At trial, Government cooperators Raphael Pagan and Ramon Sanchez testified that they sold large quantities of heroin to Gomez on a regular basis. Importantly, they testified that they always sold Gomez heroin on credit and were not paid until after he distributed the drugs to his customers. They also testified that Gomez occasionally sold them cocaine, and that they had sometimes helped Gomez cook crack cocaine.

The jury returned a guilty verdict on all counts and the District Court

4

sentenced Gomez to a term of 25 years' imprisonment. This timely appeal followed.

## II.[4]

Gomez first argues that the DEA's prolonged warrantless use of a pen register and trap and trace device violated his privacy rights under the Fourth Amendment. We agree with the District Court that this argument is foreclosed by *Smith*. Gomez provided a third party—in this case, Sprint—with all the data that the DEA obtained through the use of the pen register and trap and trace device. In so doing, Gomez abandoned his privacy interest in this data because he "assumed the risk that the information would be divulged to police." *Smith*, 442 U.S. at 745. Although Justice Sotomayor has urged the Court to reconsider *Smith*'s holding that "an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties," *United States v. Jones*, 132 S. Ct. 945, 957 (2012) (Sotomayor, J., concurring), we remain bound by *Smith* until a majority of the Court endorses this view.[5]

---

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a District Court's legal conclusions with respect to a motion to suppress. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). When reviewing a challenge to the sufficiency of the evidence, "we must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (internal quotation marks and citations omitted).

[5] In the proceedings below, Gomez conceded that his position was "contrary to" *Smith*, but cited Justice Sotomayor's concurrence in *Jones* for the proposition that "*Smith* is antiquated and must be reconsidered." J.A. 60. Gomez presents a different argument

Gomez next argues that the evidence presented at trial did not support his conspiracy conviction. Specifically, he argues that the evidence demonstrated, at most, a "wholesale buyer-seller relationship" between himself and the Government's cooperating witnesses—not a conspiracy. Gomez concedes that he did not raise this issue in the District Court and, accordingly, that plain error is the proper standard of review in this appeal. *See United States v. Mornan*, 413 F.3d 372, 381 (3d Cir. 2005).

Viewing the evidence in the light most favorable to the Government, we conclude that a reasonable jury could have found the essential elements of a conspiracy beyond a reasonable doubt. Pagan and Sanchez testified that they always provided Gomez with heroin on credit. In the context of large-scale drug distribution, this fact alone provided the jury with sufficient evidence of a

on appeal. Instead of urging us to overrule *Smith*'s "third party doctrine," Gomez contends that this doctrine has already been "cabined" by five Justices of the Supreme Court—a number he reaches by combining Justice Sotomayor's and Justice Alito's concurrences in *Jones*. Appellant's Br. 27, 31. As Gomez did not raise this argument before the District Court, it is waived. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 336 (3d Cir. 2009).

In any event, we reject Gomez's contention that the concurrences in *Jones* "cabined" *Smith*. Justice Alito's concurrence did not explicitly seek to limit *Smith*, and indeed relied heavily on the fact that drivers of automobiles do not expect third parties to possess detailed, long-term data regarding their location. *Jones*, 132 S. Ct. at 964 (Alito, J., concurring). By contrast, cell phone users do expect service providers to possess detailed, long-term data regarding the numbers they dial because this information is necessarily conveyed in the course of connecting a call. *Smith*, 442 U.S. at 743. By disclosing this data, cell phone users, unlike drivers of automobiles, "assume[] the risk" that a third party will convey it to law enforcement. *Id.* at 744. Therefore, we are not persuaded that the two concurrences in *Jones* have limited *Smith* to short-term call monitoring.

6

conspiracy. *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008). Additionally, these witnesses testified that Gomez sold them cocaine, and that they helped Gomez cook crack cocaine. Accordingly, we see no reason to disturb Gomez's conspiracy conviction.

In light of the foregoing analysis, we will affirm the judgment of the District Court.