**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3169
_____

UNITED STATES OF AMERICA

v.

EDWARD DOLLSON,
a/k/a EDWARD DOLISON,
                                    Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-13-cr-00277-001)
District Judge: Hon. Joel H. Slomsky
_____

Submitted Under Third Circuit LAR 34.1(a)
April 16, 2015
_____

Before: AMBRO, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: April 21, 2015 )

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Edward Dollson appeals his judgment of conviction, arguing that the Government improperly vouched for its witnesses and that 18 U.S.C. § 922(g)(1) is unconstitutional. For the following reasons, we will affirm.

I

A grand jury indicted Dollson for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] At trial, the Government presented testimony from Officers Matthew York and Carmen Palmiero about an incident involving Dollson and his girlfriend, Khariyyah Goldsmith. On December 10, 2012, the officers witnessed a woman run out of a house exclaiming that a man inside was "going to kill" someone. App. 88. Hearing a "disturbance" upstairs, the officers entered the house. Id.

Officer York testified that, as he ascended the stairs, he saw Dollson "holding . . . a black firearm about head level, pointed at a female in the room." App. 88. Officer Palmiero testified that from his vantage point on the upstairs landing, he could only see part of Dollson's body and "a hand going up" but not "what exactly [was] in his hand." App. 166. Both officers agreed that Officer York then "yelled gun," App. 89, and Officer York testified that he saw Dollson then "discard[] that firearm back behind him, lunge[] across the room with both hands and grab[] the female around the neck," App.

---

[1] The grand jury also indicted Dollson on one count of crack cocaine possession in violation of 21 U.S.C. § 844, which the Government dismissed before trial.

2

88-89.

Both officers testified that Officer Palmiero then tackled Dollson and Officer York "escorted" Goldsmith, "who was hysterical, out of the room," although he did not completely leave the room. App. 89. Seeing Dollson's "hands [] reached out to where the firearm was tossed" as he struggled with Officer Palmiero on the ground, Officer York stepped on Dollson's hand "to make sure that [Dollson] couldn't grab the weapon," picked up the gun, and cleared a live round from the chamber. App. 89.

On cross-examination, defense counsel questioned both officers about why their police reports mentioned only that a gun was recovered and did not mention that Officer York saw Dollson holding the weapon. Defense counsel also asked Officer York why he would have entered the room without drawing a weapon, and then left his partner struggling with Dollson while he escorted Goldsmith from the room, if in fact he had seen Dollson with a firearm. Defense counsel also asked Officer York about differences between his trial and preliminary hearing testimony.

After the Government rested, Dollson presented testimony from Goldsmith, who testified that, on the day of the incident, she returned to her house to find Dollson lying in bed next to a gun. The two began to argue, and Dollson blocked Goldsmith from leaving the room. Goldsmith testified that she then picked up the gun and pointed it at Dollson's feet. According to Goldsmith, Dollson said, "you don't know what you're doing with a gun," grabbed it from her, and tossed it on the floor beside the bed. App. 207. They

3

continued to argue and Dollson shook her a couple of times before Officers York and Palmiero entered. She claimed that the officers knocked twice before entering, ordered Dollson to the floor, and then saw the gun.

During closing arguments, the Government reviewed the elements of the felon-in-possession charge and argued that the officers' testimony established that Dollson possessed the gun. The defense challenged the officers' credibility, emphasizing that their reports failed to mention that Officer York had seen Dollson with a gun and arguing that the officers' actions—entering the room without guns drawn and Officer York's removal of Goldsmith from the room during Officer Palmiero's struggle with Dollson—were inconsistent with the behavior of officers who knew a weapon was in the room. Defense counsel also questioned why Officer York's preliminary hearing testimony differed from his testimony at trial, pointing out that Officer York had sworn to tell the truth and was "under oath" at the preliminary hearing. App. 262. Defense counsel asked the jury to credit Goldsmith's account that Dollson disarmed her and find that his brief possession of the gun was justified.

The Government opened its rebuttal with several statements that prompted three objections from defense counsel on the ground of improper vouching, each of which the District Court overruled. The Government stated first that "[t]o believe the defense's theory of the case, you would have to believe that Officers York and Palmiero came to court today, took an oath, swearing to tell the truth, and lied." App. 282. The

4

Government then reiterated that to find the defendant not guilty, the jury "would have to believe . . . that two Philadelphia police officers came into this court, stood at that stand, swore and took an oath, and then lied to you about what they saw in that room."  App. 283.  The Government then stated: "I submit to you that there's no evidence in this case suggesting to you why these two Philadelphia police officers would contrive [this] story" about Dollson.  App. 283-84.

The Government then pointed out that the officers' stories differed based on their vantage points and asked: "[I]f you believe that the officers contrived a story about seeing the defendant point a firearm, then . . . why wouldn't both officers just tell you they both saw a gun?"  App. 285.  The Government urged the jury to credit the testimony of the officers, who, unlike Goldsmith, have "no stake in the outcome of this case."  App. 286.

After arguing that the evidence failed to satisfy the four prongs of a justification defense, the Government asserted that the officers entered the premises out of concern for the safety of the people in the house and that "this is the kind of danger that these police officers face on their daily job, but they took this risk in this case in order to break up a fight and to prevent possible serious injury to the woman upstairs."  App. 289-90.

After the rebuttal concluded, defense counsel again objected, arguing that the statements were impermissible "vouching."  App. 293.  The Government explained that it was "using the language that defense counsel used in [her] closing" and was "refuting" defense counsel's argument that the officers had lied.  App. 293.  The District Court

overruled the objection.

The jury convicted Dollson, and he now appeals.

## II[2]

### A

"A prosecutor improperly vouches when he (1) assures the jury that the testimony of a government witness is credible, and (2) bases his assurance on either his claimed personal knowledge or other information not contained in the record." United States v. Lore, 430 F.3d 190, 211 (3d Cir. 2005). Where, however, a prosecutor merely "argues that a witness is being truthful based on the testimony given at trial, . . . the prosecutor is engaging in proper argument and is not vouching." United States v. Walker, 155 F.3d 180, 187 (3d Cir. 1998). Thus, "it is not enough for a defendant on appeal to assert that the prosecutor assured the jury that a witness' testimony was credible." Id. He must instead "identify as the basis for that comment an explicit or implicit reference to either the personal knowledge of the prosecuting attorney or information not contained in the record." Id. When reviewing statements for improper vouching,[3] we must consider them "in the context in which they were given." Lore, 430 F.3d at 212.

Dollson contends that the Government improperly vouched for the credibility of Officers York and Palmiero when the Government indicated that, to find for the

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[3] We review the District Court's ruling on any contemporaneous objections for abuse of discretion. United States v. Brennan, 326 F.3d 176, 182 (3d Cir. 2003).

defendant, the jury "would have to believe . . . that two Philadelphia police officers came into court, stood at that stand, swore and took an oath, and then lied to [the jury] about what they saw." App. 283. We disagree. "A prosecutor may argue in the negative that the assertions made by defense counsel that a witness is lying are not supported by the testimony in the record." Walker, 155 F.3d at 187. The Government here did just that, referencing the officers' testimony that they did not set out to target Dollson but happened upon the incident, detailing the inconsistencies in the officers' testimony about the incident, and asking, if the officers had contrived a story, "wouldn't their stories be consistent?" App. 285. The Government's use of "I submit to you" when arguing that there was "no evidence . . . suggesting . . . why these two Philadelphia officers would contrive a story," App. 283-84, further demonstrates that the prosecutor's statements were confined to proper argument, as "submit" means "to commit to the discretion of another" and therefore "does not assure the jury that the witness is credible, [but] instead asks the jury to find that the witness was credible." Walker, 155 F.3d at 188 (internal quotation marks and citations omitted) (emphasis in original). Because the Government did not give any assurances based on claimed personal knowledge or evidence outside the record, the statements were not impermissible vouching.

Dollson also contends that the Government impermissibly appealed to "the jury's sense of loyalty to those who serve in law enforcement," Appellant Br. 18, when it described the incident as "the kind of danger that these police officers face on their daily

7

job" and noted that "these officers go out and risk their lives every day," App. 293. Even if we were to conclude that these statements were improper, they are harmless. First, the statements were confined to the Government's rebuttal summation and were made in response to defense counsel's suggestion that Officer York's decision to enter the room without drawing a gun, and to then remove Goldsmith from the room while his partner struggled with Dollson, was inconsistent with the actions of a police officer who had seen Dollson with a gun. Second, the record demonstrated that the officers responded to a request for assistance and came upon a volatile situation as part of their duty that day. Thus, by arguing that the officers were performing their daily duties, the Government was appropriately rebutting defense counsel's argument that their conduct was out of the ordinary. Third, the District Court instructed the jury "not [to] be influenced by any person's . . . occupation," App. 296, and that "[t]he fact that a witness is employed as a law enforcement officer does not mean that his or her testimony necessarily deserves more or less consideration or greater or lesser weight than that of any other witness," App. 304. The District Court also told the jury that statements of counsel are not evidence. A jury is presumed to follow its instructions, Richardson v. Marsh, 481 U.S. 200, 211 (1987), and we have no reason to doubt it did so here. Finally, the evidence against Dollson was strong. Officer York testified that he saw Dollson point the gun at Goldsmith, both officers claimed to see Dollson reach for the gun, and the defense's own witness testified that she found Dollson lying in bed next to the gun. Thus, we conclude

8

that the Government's statements provide no basis for reversal.

B

Dollson also asserts that the felon-in-possession statute, 18 U.S.C. § 922(g), is unconstitutional both on its face and as applied to his conduct. His facial challenge rests on his argument that the conduct proscribed by the statute does not substantially affect interstate commerce and thus it is not a valid exercise of congressional power under the Commerce Clause. We rejected this argument in United States v. Singletary, 268 F.3d 196, 205 (3d Cir. 2001), and see no reason to revisit it.

Dollson's as-applied challenge is also without merit. Proof that a firearm "traveled in interstate commerce, at some time in the past, [is] sufficient to satisfy the interstate commerce element" of the felon-in-possession statute. Id. To show that a firearm has been transported across state lines, the Government need only offer evidence that "the firearm was manufactured in a state other than the state where the possession occurred." United States v. Shambry, 392 F.3d 631, 634 (3d Cir. 2004). Here, the Government satisfied this burden by presenting a stipulation that the firearm was manufactured in Arizona. We therefore reject Dollson's as applied challenge.

III

For the foregoing reasons, we will affirm.